CIVIC PLAZA NATIONAL BANK OF
KANSAS CITY, Respondent,

v.

UNIVERSITY NURSING HOME, INC., a cor-
poration, and Chester B. Kaplan,
Appellants.

Nos. KCD 26097, KCD 26164.

Missouri Court of Appeals,
Kansas City District.

Oct. 1, 1973.

Motion for Rehearing and/or Transfer
Denied Nov. 5, 1973.

Donald L. Mason, Chester B. Kaplan, Kansas City, for appellants.

Bernard D. Craig, Jr., Kansas City, for respondent.

Before WASSERSTROM, P. J., and SHANGLER, and SWOFFORD, JJ.

SWOFFORD, Judge.

This is an appeal from a judgment rendered in a court-tried case, wherein the Civic Plaza National Bank of Kansas City (hereinafter called "Civic Plaza Bank") was plaintiff and University Nursing Home, Inc. (hereinafter called "Nursing Home"), Chester B. Kaplan (hereinafter called "Kaplan") and others, were named as defendants. These other defendants, University Motel, Inc. (later merged with Kay-Cee Motel Company and defendant "Nursing Home"), City National Bank and Trust Company of Kansas City, Motel Leasing, Incorporated, Fred Estrin and Abe Yeddis, were discharged from the case, and the Civic Plaza did not appeal from such order. These original defendants, therefore, are no longer in the case and will be mentioned further only so far as necessary to find a path through the labyrinth of the facts pertinent to our decision.

The plaintiff's first amended petition (upon which the suit was tried) is laid in two Counts. Count I is based upon a promissory note in the face amount of $130,000.00 upon which there was alleged to be due the principal amount of $106,000.00 plus interest, which the plaintiff alleged it owned by reason of the note being pledged and hypothecated to it as collateral security to loans, loans made by it directly to one Byron Prugh or loans guaranteed by him, which loans were in default. Count II asks that all shares of common stock in the Nursing Home theretofore pledged to secure the note sued upon in Count I be delivered to it.

The court below made findings of fact and conclusions of law and entered a money judgment against the defendant Nursing Home in the principal amount of $106,000.-00 plus interest from November 1, 1963 in the amount of $43,268.62 or a total of $149,268.62. The judgment further ordered that the plaintiff have and recover from defendant Kaplan all shares of stock in the defendant Nursing Home owned by the defendant Kaplan. It is from this judgment that the appeal is taken.

The record and exhibits before us are rampant with intercorporate dealings, interlocking officers, mergers, agreements and amendments to those agreements, real and apparent conflicts of interest, and similar beclouding facts. We have carefully reviewed all this and have struggled toward and found what we believe to be the basic facts and important factors decisive of this case, which we undertake to summarize:

On February 1, 1958, University Motel, Inc., a Missouri corporation, purchased a developed property at 4125 Rainbow Boulevard, Kansas City, Kansas, from Byron Prugh, John M. Dickey and others, for $650,000.00. As part of the purchase price, University Motel, Inc. executed a promissory note to Byron Prugh and John M. Dickey, which was in terms as follows, with subsequent additions noted:

## "COLLATERAL NOTE

$130,000.00                                                    February 1, 1958

For value received, we promise to pay to the order of John M. Dickey and Byron E. Prugh ONE HUNDRED THIRTY THOUSAND and no/100 ($130,000.00) at Merchants Produce Bank, Kansas City, Missouri, with interest from date until paid, at the rate of five per cent per annum, both principal and interest, to be paid in equal monthly installments of $1378.91 on the first day of each month for a period of ten years, the first payment to be due March 1, 1958. Demand, protest and notice of non-payment of this note is waived by both makers and endorsers hereof. To secure the payment of this note and any and all other indebtedness which we may owe them at any time before the payment of this note, we have hereunto attached, as collateral security, all of the stock of University Motel, Inc., a Missouri corporation, and have executed a separate collateral agreement further securing payees with regard to such collateral. All dividends and maturity coupons pending life of this loan shall be paid to holder of this note after any default.

Any assignment or transfer of this note, or any other obligations herein provided for, shall carry with it the said collateral securities and all rights under this agreement. And we hereby authorize John M. Dickey or his assigns, on default of payment of this note or any part thereof, according to the terms hereof, to sell said collateral, or any part thereof, at public sale, with fifteen days notice, and by such sale the pledgor's right of redemption shall be extinguished.

Privilege is given to pay two or more installments at any time.

UNIVERSITY MOTEL, INC.

(SEAL)                          By /S/ Sheldon P. Sandler
                                        President

ATTEST:

/S/ Irving Achtenberg
       Secretary                          (PLAINTIFF'S
                                           EXHIBIT
                                             15
                                           5/25/70)

Payment of this note subject to terms of Moratorium Agreement dated June 29, 1960.

                              6–30–60
                              /S/ Byron E. Prugh [1]

/S/ Byron E. Prugh

Without recourse
/S/ John M. Dickey" [2]

---

[1]. This restriction was written on the face of the note in longhand.

[2]. These endorsements, undated, appear on the back of the note.

Prugh later acquired Dickey's interest in this note and used it as collateral for loans at the Suburban Bank of Kansas City, which were paid and retired from the proceeds of the subsequent "Civic Plaza" loans.

In addition to the note, and under the same date of February 1, 1958, University Motel, Inc. entered into an "Agreement to Pledge Stock as Security" whereby it pledged "all of the issued or thereafter issued capital stock of (the) Corporation" to secure the payment of said promissory note and pursuant to such pledge agreement a stock certificate No. 6 in the University Motel, Inc. for 250 shares issued August 1, 1958 in which the "Kay-Cee Motel Co." was the registered owner, was endorsed in blank by "Chester B. Kaplan, President" and presumably delivered to Prugh. The record shows that on August 1, 1958, Kaplan had purchased all of the outstanding shares in University Motel, Inc. in the name of Kay-Cee Motel Co. Kaplan owned control of the common stock in Kay-Cee Motel Co. and was its president. He was also an officer, shareholder and director in University Motel, Inc.

On June 29, 1960, University Motel, Inc., the owner of the real estate at 4125 Rainbow Boulevard and the obligor on the promissory note here in suit, entered into a lease agreement with Motel Leasing, Inc., a Kansas corporation, owned and operated by Prugh, one of the original sellers of the property and then the individual owner of the purchase money note. Through his corporation he thus leased the property which he had sold and as a part of this transaction his corporation entered into an agreement with University Motel, Inc. (wholly owned by Kay-Cee Motel Co., in which Kaplan owned all the stock, which stock was pledged to secure the note held by Prugh) denominated "Moratorium of Note" which basically provided as follows:

(1) Balance due on Note as of June 1, 1960 was $106,000.00;

(2) Payments on the Note to cease as of May 31, 1960 and the June payment was to be returned to University Motel, Inc.;

(3) All interest for the period of the moratorium was waived;

(4) Original Note to be endorsed ". . . subject to terms of Moratorium . . .";

(5) At end of lease term or if lessee should default on lease, the moratorium terminates and payment on Note resumes 90 days following restoration of possession of premises to lessor;

(6) If lessee defaults on lease, the balance of Note shall be adjusted by amount of damages due lessor;

(7) No payment on Note after termination of moratorium until lessor examines the Note;

(8) If, at end of term, lessee renews, the lessor shall:

(a) Pay to lessee or then holder of the Note, ½ of the balance now due on Note thus reducing the total sum due to $53,000.00.

(b) If lessor refinances the property the balance then due shall be paid in full.

This document was signed by Kaplan (president) and Abe Yeddis (secretary) for University Motel, Inc., and Byron Prugh (president) and Helen F. Prugh (secretary) for Motel Leasing, Incorporated.

On June 29, 1962, a corporate merger was effected merging University Motel, Inc. with Kay-Cee Motel Co., thereafter to be known as University Motel, Inc. and changing the authorized shares of common stock from 1000 shares of $100.00 par value to 20,000 shares of $1.00 par value. Both of the corporations were obviously controlled by Kaplan. He was then president of both companies. At the time of the

merger there were 250 shares of capital stock (all of the outstanding stock) in University Motel, Inc. which was registered in the name of Kay-Cee Motel Co. This certificate of stock was pledged as security to the Prugh-Dickey note as above stated.

In August or September of 1962, Prugh agreed to sell all of his stock in the Motel Leasing, Inc. (then Lessee of the property at 4125 Rainbow) to Kaplan (then principal owner of the Lessor University Motel, Inc.) acting through one Dwight O. Martin. Martin's identity was never clearly defined but the clear inference emerges from the record that he was a nominee or straw for Kaplan. A sales contract was drafted in Kaplan's office under the provisions of which Prugh agreed to transfer all outstanding shares of stock in Motel Leasing, submit the resignation of all officers, and deliver the corporate stock and minute books, corporate seal and copies of tax returns to Martin. A copy of the contract, signed by Prugh but otherwise unexecuted, was offered in evidence and ultimately received in evidence as to Kaplan only. However, the evidence showed by a letter from Lyle Hanson (Prugh's attorney) to Kaplan upon which Martin had acknowledged its receipt and accuracy dated September 17, 1962; a letter from Kaplan to Hanson dated January 30, 1963, and acknowledged as correct by Prugh; and the fact that a check in the amount of $1000.00 drawn on Kaplan's office account and given to Prugh, that this sale was effectively consummated and Kaplan thus gained control of Motel Leasing, Inc. As a part of this sale agreement, the promissory note here in question and certain land in California "previously held by Motel Leasing, Inc." were transferred to Prugh "the actual owner thereof."

Sometime prior to June 21, 1963, the name of University Motel, Inc. was changed to "University Nursing Home, Inc." of which Kaplan was Chairman of the Board.

On June 21, 1963, Nursing Home instituted a suit against Motel Leasing, Inc. in the Circuit Court of Jackson County, Missouri, there being case No. 653,184 entitled "Petition for Rent" and based upon the lease of June 29, 1960 between University Motel, Inc. as lessor and Motel Leasing, Incorporated as lessee, wherein Nursing Home asked for possession of the property at 4125 Rainbow Boulevard. It had been in possession of this property for over nine months. Plaintiff in that suit further asked for rent, value of missing inventory items, reimbursement for bills and accounts paid on behalf of Motel Leasing, liquidated damages for breach, and damages for waste of property—all in the amount of $106,000.00, the exact amount of the unpaid principal on the original purchase money note then held by Prugh. Nursing Home further sought the order of the court that a judgment be entered in its favor for $106,000.00 and that such amount be credited upon the Prugh note and that such note be declared paid in full, and that the stock of University Motel, Inc. pledged to secure said note be returned to it, and for its costs.

This case was filed on June 21, 1963. Neither Prugh nor Civic Plaza was joined as a party. A hearing was held on the same day. Robert De Witt appeared as counsel for the defendant Motel Leasing, Incorporated and apparently entered its appearance. Kaplan appeared for plaintiff Nursing Home. De Witt's contribution to the proceedings was to state to the court that his client did not admit nor deny the plaintiff's allegations and asked the court to require strict proof. Kaplan (the controlling owner of both plaintiff and defendant) then introduced the lease and the "Moratorium on Note". He offered the testimony of Charlene Wilkerson, Treasurer of Motel Leasing, who testified as to the unpaid rent, and Fred E. Estrin, president of Estrin Construction Company (and also an officer in Nursing Home) who testified as to the damage to the property,

items of missing equipment and cost of repair and replacement.[3]

The transcript of this proceeding is seven (7) pages in length. At the conclusion of this hearing, the transcript shows:

"THE COURT: Let the record show judgment as prayed for by the plaintiff for possession and for $106,000.00. Entry to be furnished."

There is no relationship to the amount of rent and damages claimed in the petition or supported by the evidence and the amount of this judgment.

Of all this bizarre history now emerges the most fantastic episode—the Judgment Entry "furnished" and dated June 21, 1963. In it, the court found that the defendant was in default under the lease and

"2. * * * that the proposed *agreement to compromise* the damage for the breach of the lease at $106,000.-00 is under the evidence presented reasonable and proper.

3. The Court orders that the said sum of $106,000.00 in damages be *credited as payment in full of the note* referred to in the 'Moratorium on Note' * * *

4. The Court orders that the *Trust Officer of Merchants-Produce Bank of Kansas City, Missouri, as Escrow Agent, return to plaintiff the note* dated February 1, 1958, in the original sum of $130,000.00 *and the stock* of plaintiff corporation formerly titled (sic) University Motel, Inc." (Emphasis supplied)

■ So far as the transcript of the record in this proceeding reveals, there had been no "agreement to compromise"—although it would not be difficult to conclude from the whole record now before us that a "compromise agreement" had in fact

been reached between the two Kaplan controlled corporations. Further, the court was absolutely without power to enter a judgment for rent and damages and then set it off against and in payment of a note owned by a person not a party to the suit. Still further, at the time of the entry, the Merchants Bank was not holding either the note or stock as escrow agent, was not a party to suit, and *was not subject to such mandatory orders of the court*. Rather, the note was then owned by Prugh and it and the stock were pledged as bank collateral.

On October 18, 1963, long after the judgment became final, Prugh filed a Motion to Set Aside Judgment and the court held a protracted hearing on this motion on November 27, 1963, which apparently resulted in the entry of an "Order Modifying Judgment Entry" on February 17, 1964, which found that Prugh was the owner of the note and that Civic Plaza was his pledgee; that the court had not been made aware of these facts at the previous hearing; that Prugh was a necessary party to the suit, and that the original judgment was void so far as it affected the note. The court entered a new judgment eliminating paragraphs 3 and 4 above set forth. While we agree with the trial court in this action, that this purported modification was a nullity, the transcript of the evidence does reveal a fact pertinent here, namely, Prugh's testimony that Kaplan was impelled to acquire the ownership of Motel Leasing, Inc. to establish some tax advantages from losses sustained by that company and for that reason paid $1000.00 for the acquisition of its stock ownership and released the note, stock collateral and "Moratorium on Note" agreement.

Prugh brought suit on the note against Nursing Home and Kaplan, and thereafter Prugh defaulted in his obligations to Civic Plaza. Civic Plaza was permitted to intervene in the case, No. 655,982 (this action)

---

3. It is interesting to note that on May 15, 1963, Nursing Home had executed a note and mortgage with the City National Bank and Trust Company in the amount of $650,000.00 as a construction loan to convert the motel into a nursing home.

and thereafter by order of the court below became the sole plaintiff therein. Civic Plaza under its collateral note and agreement with Prugh became the owner of such note and subrogated to all of Prugh's rights therein. The suit was tried with the results as first mentioned. We affirm.

The appellants' joint brief raises only one basic ground upon which they seek our mandate of reversal. Simply stated, it is that the judgment in case No. 653,184, University Nursing Home, Inc., Plaintiff versus Motel Leasing, Incorporated, Defendant, which was entered June 21, 1963, is *res judicata* and therefore binding upon the plaintiff herein because it, as assignee, through its assignor Prugh, was in privity with the defendant Motel Leasing, Incorporated. Occupying such position of privy, the appellants assert, the plaintiff is bound by the judgment that no amount is due under the promissory note in suit and therefore the pledge of University Motel, Inc. stock to secure such note is inoperative.

The appellants' brief asserts its position in this manner:

> "The key issue in this case is that of the effect of the judgment entered in Cause No. 653,184 and this is a question of law which this Court must decide. * * * Under these facts, Missouri law clearly holds that plaintiffs (sic) are bound by the prior judgment because they (sic) were in privity with the person from whom they (sic) received the note, Motel Leasing, Incorporated."

The respondent asserts, with equal vigor, that the judgment in case No. 653,184 is not *res judicata* because the elements of identity of subject matter and parties essential to call such doctrine into effect is lacking; the judgment was obtained by collusion and that such judgment is not conclusive on any issue in the present case.

While the factual background of this case is obviously complicated and confused, the legal question thus presented is a simple one.

■ No factual or legal question is raised challenging the interest of Civic Plaza, as pledgee of Prugh. The note was endorsed by the payees (Dickey and Prugh) and thus became a bearer note and was delivered to Civic Plaza on July 9, 1963 as collateral security for a loan. Civic Plaza's interest in such note as pledgee, to the extent of Prugh's indebtedness, was identical with that of Prugh, had he remained the owner of the note and not defaulted in his obligation to the bank. 72 C.J.S. Pledges § 5; Aab v. French, 279 S.W. 435 (Mo.App.1926); Hathaway v. Helmkamp, 427 S.W.2d 455, 460 (Mo. 1968). In point of fact, Prugh's indebtedness to Civic Plaza substantially exceeded the amount of the judgment below and, therefore, upon Prugh's default, Civic Plaza stood in his shoes and acquired all of his rights flowing from his ownership of the note.

The courts and text writers have pronounced and written a number of refinements to the generally accepted and orthodox meaning of *res judicata*—labels, if you will, to apply to differing factual situations. Thus, we find the use of such terms as merger, bar, collateral and direct estoppel and estoppel by judgment. The case before us does not require any such refinements. We can and do adopt as applicable here the broader concept as expressed in 46 Am.Jur.2d, Judgments, § 394, where *res judicata* is defined as meaning:

> ". . . an existing final judgment rendered upon the merits, *without fraud or collusion*, by a court of competent jurisdiction, *is conclusive of causes of action* and of *facts* or *issues* thereby litigated, *as to the parties and their privies*, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." (Emphasis supplied)

■ Missouri decisions while generally applying the standard of "same parties" (or their privies) and "same cause of action" have used the term "estoppel by judgment". See Smith v. Preis, 396 S.W.

2d 636, 640 (Mo.1965) and Abeles v. Wurdack, 285 S.W.2d 544, 546 (Mo.1956) and cases cited therein. As a further definition (not a restriction but an extension of the rule) the Missouri courts have held judgments to be *res judicata* and binding upon the parties, and their privies must have concluded not only those matters which *were* litigated and determined, but also those matters which *could have been litigated* and determined. State ex rel. Farmer v. Allison, 359 S.W.2d 245, 246–247 (Mo.App.1962); Sierk v. Reynolds, 484 S.W.2d 675, 681 (Mo.App.1972); Smith v. Preis, supra; Abeles v. Wurdack, supra.

Neither Prugh nor Civic Plaza was a party to the original action so they could not, of course, be bound as such under the doctrine of *res judicata*. If that judgment is to be held binding on Civic Plaza, as pledgee of Prugh, it must clearly appear that Prugh was, in fact, in privity with Motel Leasing, Inc. We hold that no such privity existed at the time of the entry of the judgment in case No. 653,184.

The accepted definition of such relationship is well expressed in Mathison v. Public Water Supply District No. 2, 401 S.W. 2d 424, l. c. 431 (Mo.1966), where the court said:

"'Privity' as used in the doctrine res judicata means mutual or successive relationships to the *same rights or property constituting the subject matter of the litigation*; and to make one 'privy' to an action he must have acquired his interest in the subject matter of the action subsequent to the commencement of the suit or rendition of judgment. 50 C.J.S. Judgments § 788, p. 324; Womach v. City of St. Joseph, 201 Mo. 467, 100 S. W. 443, 445–446, 10 L.R.A.,N.S., 140; National Lead Co. v. Nulsen, 8 Cir., 131 F.2d 51, 56 [7]." (Emphasis the Court's in Mathison)

That no privity existed in the prior suit is evident from the record before us for a number of reasons, namely, 1) the promissory note which is the subject matter of this case represented part of the original purchase price of the real estate, was payable to Prugh (and Dickey) individually, and there was no showing that it was ever owned by Motel Leasing, Inc.; 2) Prugh was not individually a party to the lease involved in the original action nor the "Moratorium on Note" agreement, both of those documents being executed by Motel Leasing, Incorporated; 3) Prugh had sold all of his stock in Motel Leasing, Inc. to Kaplan and delivered all of the corporate records to him nine months before the original suit was filed; 4) at the time of this sale, the promissory note here in suit and some real estate in California were delivered to Prugh, who was acknowledged to be "the actual owner" thereof; and 5) at the time of the institution of the original suit and the judgment of June 21, 1963, Prugh had no connection with Motel Leasing, Inc. either as a stockholder, officer, director or otherwise, but said corporation was wholly owned and controlled by Kaplan or his nominees.

■ At most, Prugh can be said to have temporarily pledged his note to secure the obligations of Motel Leasing under the lease from University Motel, since he apparently delivered the note to Motel Leasing and by endorsement thereon made it subject to the Moratorium on Note agreement. But such pledge and agreement was terminated when the ownership of Motel Leasing was transferred to Kaplan and the note returned to Prugh as his property. It is fundamental in the law governing pledges that a valid pledge requires the delivery of the property to the pledgee and its retention by him. Any delivery back of the property by the pledgee to the pledgor or other relinquishment by him of possession, terminates or waives the pledge. Grand Avenue Bank v. St. Louis Union Trust Co., 135 Mo.App. 366, 115 S.W. 1071, 1076–1077 (1909); National Bank of Commerce of Kansas City, Mo. v. Flanagan Mills and Elevator Co., 268 Mo. 547, 188 S.W. 117, 121 (banc 1916); Jones on Pledges (2nd Ed.), Section 23.

■ We, therefore, hold that no such privity existed between Civic Plaza, pledgee of Prugh, and Motel Leasing, Inc. as to warrant the application of the doctrine of *res judicata* by reason of the judgment of June 21, 1963 in case No. 653,184. Civic Plaza was therefore entitled to recover both the principal and interest awarded it by the trial court.

■ We now direct our attention to the "Agreement to Pledge Stock As Security" dated February 1, 1958, contemporaneously with and as a part of the original real estate sale and the execution of the promissory note. Under this contract executed by University Motel, Inc., it agreed that the 250 shares of issued stock in that corporation was pledged as security for the note (this was the certificate registered in the name of Kay-Cee Motel Co. and endorsed for that corporation by Kaplan as president and turned over to Civic Plaza along with the note in suit); that it would not issue any other capital stock unless such was also pledged as security for the promissory note, and that in the event of default in the payment of the principal and interest when due on said note, such stock could be sold by the pledgees (Prugh and Dickey) at public or private sale and the proceeds thereof be applied to the payment of the note.

There is no provision in this contract prohibiting its assignment or pledge. The security and benefits of this contract were, in fact, pledged by Prugh to the Civic Plaza, along with the promissory note and stock certificate to secure Prugh's indebtedness. Thus upon Prugh's default, Civic Plaza succeeded as pledgee to all of his rights thereunder. The Moratorium on Note above discussed had the effect only of postponing any default on the note, which in turn only postponed Prugh's rights under the stock pledge agreement. Such rights became operative and viable when the moratorium ceased and the note was redelivered to Prugh.

It has previously been demonstrated that the defendant University Nursing Home, Inc. is the successor to University Motel, Inc. and to Kay-Cee Motel Co. University and Kay-Cee were merged under the name of University Motel, Inc. and later its name was changed to University Nursing Home, Inc. The present corporate defendant therefore is obligated by succession and operation of law under the stock pledge agreement of February 1, 1958.

The trial court in its conclusions of law found that Civic Plaza was entitled to obtain possession of all shares of stock in University Nursing Home, Inc. owned by Kaplan, and its judgment on this point states:

"2. That plaintiff have and recover from defendant Chester B. Kaplan possession of all shares of stock of defendant University Nursing Home, Inc. owned by the said Chester B. Kaplan."

We hold that under the "Agreement to Pledge Stock as Security" dated February 1, 1958, all outstanding stock of University Nursing Home, Inc. is subject to the rights of Civic Plaza as assignee of Prugh, whether the same is owned by Kaplan or others. We do not decide whether under the agreement respondent's collateral security lien against additionally issued stock, if any, in the hands of bona fide holders for value without notice may or may not be enforceable because that issue is not presently before us.

In all other respects, the judgment of the court below is affirmed but the cause is remanded with directions that Paragraph No. 2 of the judgment be amended to conform with this opinion as to the stock of defendant University Nursing Home, Inc.

All concur.