**Christopher A. WRIGHT, Respondent,**

v.

**BARTIMUS FRICKLETON ROBERTSON & GORNY PC, et al., Respondent;**

**The Hershewe Law Firm, Appellant.**

**No. WD 72614.**

Missouri Court of Appeals, Western District.

Sept. 20, 2011.

Application for Transfer to Supreme Court Denied Nov. 1, 2011.

Application for Transfer Denied Dec. 20, 2011.

560

Christopher Wright, Respondent Pro Se.

Susan Ford Robertson and J. Zachary Bickel, Kansas City, MO, for appellant The Hershewe Law Firm.

James P. Frickleton and Kip Robertson, Leawood, KS, for respondent Bartimus, Frickleton, Robertson & Gorney, P.C.

Before Division Two: THOMAS H. NEWTON, Presiding Judge, CYNTHIA L. MARTIN, Judge and GARY D. WITT, Judge.

CYNTHIA L. MARTIN, Judge.

The Hershewe Law Firm ("HLF") appeals from the trial court's grant of summary judgment in favor of Bartimus, Frickleton, Robertson & Gorney ("BFRG"). The trial court ruled that a declaratory judgment action addressing an attorney's lien asserted by HLF was barred by the doctrine of res judicata because the validity and amount of HLF's lien had already been determined in the personal injury action where the lien arose. HLF contends that the trial court erred because HLF was not a party to the personal injury action, there is no identity of parties between the personal injury action and the declaratory judgment action, and the court in the personal injury action lacked personal jurisdiction over HLF. We reverse.

**Factual and Procedural History**

The factual and procedural history is not disputed in any material manner. On August 25, 2005, BFRG filed a personal injury action on behalf of Amber Marshall, a minor child ("the Marshall Case") in Jasper County against a Jasper County hospital and medical group. BFRG affiliated with Christopher Wright ("Wright"), then employed as an associate at HLF, to serve as co-counsel in the case. HLF appeared on the pleadings with BFRG. Wright worked on the Marshall Case until August 2007, when he left his employment with HLF.

On November 6, 2007, HLF wrote BFRG as follows:

> I have not had an opportunity to look over Amber Marshall's case, but I would be honored to serve as local counsel. However, I am not in a position where I would want to be lead counsel or even second chair the case. If you and [Wright] decide it would be best for you to run with the case together, that is fine with me.

On December 18, 2007, BFRG wrote HLF and advised it had decided to affiliate with Wright as co-counsel, as was suggested in HLF's November 6, 2007 letter. BFRG also advised HLF it would cover the litigation expenses HLF had incurred to that point. Wright and BFRG then entered into a new fee sharing agreement as co-counsel on the Marshall Case. Wright made the necessary arrangements to secure HLF's Marshall Case file. HLF performed no further services in the Marshall Case.

In April 2009, the parties in the Marshall Case reached a settlement. Because Amber Marshall was a minor, the settlement required court approval pursuant to section 507.184.3.[1] On May 15, 2009, HLF sent a letter to defense counsel asserting a lien for expenses of $56,716.88 and for reasonable attorney's fees in an unspecified amount. HLF's letter requested notification "of the date, time, and location of the settlement hearing so that *this matter* can be heard." (Emphasis added.) HLF did not file its letter with the court in the Marshall Case.

With the consent of the defendants, BFRG dismissed the Marshall Case on file

---

1. All statutory references are to RSMo 2000 as currently supplemented, unless otherwise noted.

in Jasper County without prejudice on May 26, 2009, and re-filed the case in Jackson County on May 27, 2009.[2] On May 27, 2009, BFRG also filed motions seeking approval of the confidential settlement reached in the Marshall Case and to determine the validity and amount of HLF's attorney's lien.

A hearing on BFRG's motion to approve the minor settlement was conducted on June 8, 2009, before the Honorable W. Stephen Nixon (the "Settlement Court"). A hearing on BFRG's motion to determine the validity and amount of HLF's attorney's lien was scheduled for June 22, 2009, before the Settlement Court. On June 4, 2009, BFRG sent HLF a letter by federal express enclosing a copy of the motion to determine the validity and amount of the HLF lien, along with a notice setting the motion for hearing on June 22, 2009. HLF contemporaneously received BFRG's letter and these pleadings.

On the morning of the June 22, 2009 hearing, HLF sent the Settlement Court a letter by facsimile requesting that the issue of the validity of the HLF lien not be addressed because HLF was not a party in the Marshall Case and thus (according to HLF's assertion) could not call any witnesses, testify, present any evidence, or participate in discovery. HLF also complained about the dismissal of the Marshall Case and its subsequent re-filing in Jackson County. The Settlement Court proceeded with the scheduled hearing. HLF did not attend or otherwise participate in the hearing.

On June 23, 2009, the Settlement Court entered an order ("June 23, 2009 Order") finding that it had the authority to determine the validity of HLF's attorney's lien as an issue ancillary to approval of the settlement of the Marshall Case. The Order directed BFRG to pay HLF $56,716.88 for expenses and $5,250 as a quantum meruit award for the reasonable value of attorney's fees for services rendered by HLF prior to November 6, 2007. A copy of the June 23, 2009 Order was mailed to HLF by the Settlement Court.

BFRG thereafter paid, and HLF accepted, $56,716.88 for reimbursement of HLF's expenses. However, HLF rejected BFRG's tendered payment of $5,250 for HLF's attorney's fees. The Marshall Case was dismissed with prejudice on July 28, 2009. HLF did not appeal the Settlement Court's June 23, 2009 Order.

In the meantime, on June 2, 2009, Wright filed a petition seeking a declaratory judgment in Jackson County naming HLF and BFRG as defendants (the "Declaratory Judgment Action"). The Declaratory Judgment Action sought to determine the validity and amount of HLF's lien, the same relief being sought by BFRG's motion to determine the HLF lien filed in the Settlement Court.[3]

Wright filed a second amended petition in the Declaratory Judgment Action in August 2009, following entry of the June 23, 2009 Order. In the second amended petition, Wright abandoned the request for a declaration about the validity and amount

---

**2.** BFRG suggests that the parties desired to conduct the required minor settlement approval hearing in a county other than Jasper County to protect the confidential terms of the settlement given the high profile nature of the defendants. HLF suggests that BFRG wanted HLF's attorney's lien to be determined in a county other than Jasper County. The factual dispute over the "motive" behind transferring the venue of the Marshall Case to Jackson County is not material to disposition of this appeal.

**3.** It appears that Wright and HLF were in a dispute over the manner in which fees earned by HLF from Wright's work while employed at HLF should be divided.

of the HLF lien and instead sought a declaration that the validity and amount of the HLF lien had been conclusively determined by the Settlement Court's June 23, 2009 Order.[4] HLF filed an answer to the second amended petition, asserting as an affirmative defense that it was not bound by the June 23, 2009 Order because it was not a party to the Marshall Case, and because the Settlement Court thus lacked jurisdiction over HLF. HLF did not separately request a declaration as to the validity or amount of its attorney's lien.

In February 2010, BFRG filed a motion for summary judgment claiming the Declaratory Judgment Action was barred by res judicata because the validity and amount of HLF's lien had been conclusively determined by the Settlement Court. Wright conceded BFRG's motion for summary judgment. HLF opposed the motion on the basis that it was not a party to the Marshall Case and was thus not bound by the Settlement Court's June 23, 2009 Order.

The trial court granted BFRG's motion for summary judgment finding that the Declaratory Judgment Action was barred by the doctrine of res judicata. The trial court found that it would not "act as an 'appellate' court to either affirm or reverse" the Settlement Court's June 23, 2009 Order. The trial court concluded that HLF's recourse to contest the June 23, 2009 Order would have been to appeal from the Order, which HLF did not do.

HLF appeals.

## Standard of Review

"The standard of review when considering an appeal from the grant of summary judgment is essentially *de novo*." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 119 (Mo. banc 2010) (citing *ITT Commercial Finance Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993)). "Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* at 119–20 (citing *Larabee v. Eichler*, 271 S.W.3d 542, 545 (Mo. banc 2008); Rule 74.04(c)(6)). "The court accords the non-moving party the benefit of all reasonable inferences in the record." *Id.* at 120 (citing *ITT*, 854 S.W.2d at 376). "[The entry] of summary judgment may be affirmed under any theory that is supported by the record." *Id.* (citing *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010)).

## Analysis

In its sole point on appeal, HLF claims that the trial court in the Declaratory Judgment Action erred in relying on the doctrine of res judicata to grant summary judgment in favor of BFRG.[5]

---

4. We question whether the declaration sought by Wright's second amended petition involved a justiciable controversy, a legally protectable interest, and an issue ripe for review, the essential ingredients of a request for relief under section 527.010 of the Declaratory Judgment Act. *See State ex rel. City of Crestwood v. Lohman*, 895 S.W.2d 22, 30 (Mo.App. W.D.1994). Though HLF had refused to accept the tendered payment for attorney's fees authorized by the June 23, 2009 Order by the time Wright filed the second amended petition in the Declaratory Judgment Action, it is questionable whether this represented "a real,

substantial, presently-existing controversy," *Charron v. State*, 257 S.W.3d 147, 151 (Mo. App. W.D.2008), or simply "[a] mere difference of opinion or disagreement or argument on a legal question [which] does not afford adequate grounds for invoking the judicial power" under section 527.010. *State ex rel. City of Crestwood*, 895 S.W.2d at 30. We need not resolve this issue, however, as it has not been raised on appeal.

5. We note the procedural oddity that BFRG, a defendant in the Declaratory Judgment Action, filed the motion for summary judgment

HLF claims that the trial court erroneously applied the doctrine of res judicata because HLF was not a party to the Marshall Case and because there was no identity of parties between the Marshall Case and the Declaratory Judgment Action. HLF relies on *Spath v. Norris*, which holds that the application of res judicata requires proof of four elements: " '(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or status of the person for or against whom the claim is made.' " 281 S.W.3d 346, 350 (Mo.App. W.D.2009) (citation omitted).

HLF has correctly identified the elements of res judicata when that term is used by Missouri courts *in its more limited sense* to refer only to claim preclusion which "operates as a bar to the reassertion of a cause of action which has previously been adjudicated in a proceeding between the same parties or those in privity with the parties." *State ex rel. Shea v. Bossola*, 827 S.W.2d 722, 723 (Mo.App. E.D.1992). However, the trial court used the term res judicata *in its equally applicable broader sense*.

The courts and text writers have pronounced and written a number of refinements to the generally accepted and orthodox meaning of res judicata—labels, if you will, to apply to differing factual situations. Thus, we find the use of such terms as merger, bar, collateral and direct estoppel and estoppel by judgment. The case before us does not

require any such refinements. We can and do adopt as applicable here the broader concept as expressed in 46 Am. Jur.2d, Judgments, [s.] 394, where res judicata is defined as meaning: '. . . *an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.*' *Civic Plaza Nat. Bank of Kansas City v. University Nursing Home, Inc.*, 504 S.W.2d 193, 199 (Mo.App.1973) (emphasis added); *see also Bachman v. Bachman*, 997 S.W.2d 23, 26 (Mo.App. E.D.1999). The trial court's judgment expressly referred to the italicized sentence above, and thus to the *broader definition* of res judicata, a definition which includes within its ambit estoppel by judgment—or, as more commonly referred to, a prohibition against collateral attack on a judgment. We thus treat HLF''s point on appeal as questioning whether the Settlement Court's June 23, 2009 Order was protected from collateral attack.

"A collateral attack is an attempt to impeach a judgment in a proceeding not instituted for the express purpose of annulling the judgment." *Vilsick v. Fibreboard Corp.*, 861 S.W.2d 659, 662 (Mo.App. E.D.1993). " 'Where a judgment is attacked in other ways than by proceedings in the original action to have it vacated or

seeking essentially the same relief sought by Wright, the plaintiff—a declaration that the June 23, 2009 Order conclusively determined HLF's attorney's lien. HLF raised this issue in its opposition to the motion for summary judgment, and argued that BFRG's assertion of Wright's claim rendered the motion for summary judgment a procedural nullity, at least as to HLF, against whom BFRG had

asserted no claim. HLF has not, however, raised this issue on appeal. We express no opinion, therefore, about whether it is appropriate to permit a defendant to prevail on a dispositive motion seeking the relief sought initially by the plaintiff when the movant defendant has not independently asserted a cross claim against the non-movant defendant for the relief sought in the dispositive motion.

reversed or modified ... the attack is a 'collateral attack.'" *Flanary v. Rowlett*, 612 S.W.2d 47, 49 (Mo.App. W.D.1981) (declaratory judgment constituted an impermissible collateral attack upon final decree of dissolution) (citation omitted). "[A]n action for declaratory judgment will not be tolerated as a subterfuge or façade for litigating an issue to which a former final judgment is conclusive." *Id.* at 50.

■■■ A collateral attack on a judgment is appropriate, however, when the judgment in question is void. *J.L.M. v. R.L.C.*, 132 S.W.3d 279, 284 (Mo.App. W.D.2004). "'[A] judgment which is void on the face of the record is entitled to no respect, and may be impeached at any time *in any proceeding* in which it is sought to be enforced or in which its validity is questioned by anyone with whose rights or interests it conflicts.'" *Travis v. Contico Int'l, Inc.*, 928 S.W.2d 367, 370 (Mo.App. E.D.1996) (quoting *La Presto v. La Presto*, 285 S.W.2d 568, 570 (Mo.1955) (emphasis in original)). "To save a judgment from being void, the issuing court must have 'jurisdiction of the subject matter, jurisdiction of the res or the parties, and jurisdiction to render a particular judgment in a particular case.'"[6] *Id.* (quoting *Schneider v. Sunset Pools of St. Louis, Inc.*, 700 S.W.2d 137, 138 (Mo.App. E.D.1985)).

HLF contends that the June 23, 2009 Order is void because the Settlement Court did not have personal jurisdiction over it to determine its attorney's lien.

Specifically, HLF contends that the Settlement Court could not have exercised personal jurisdiction over HLF without HLF's consent to be made a party to the original proceeding, or without BFRG's use of other process sufficient to bring HLF before the Settlement Court as a party. As such, HLF contends that the trial court's judgment erroneously concluded that the June 23, 2009 Order was protected from collateral attack.

■■ The existence of every fact essential for a court (in this case, the Settlement Court) to have rendered a valid judgment is presumed and the burden is on the party contesting the judgment to overcome the presumption. *Cloyd v. Cloyd*, 564 S.W.2d 337, 342 (Mo.App.1978); *O'Neill v. Winchester*, 505 S.W.2d 135 (Mo.App. 1974); *Colorado Milling & Elevator Co. v. Rolla Wholesale Grocery, Co.*, 102 S.W.2d 681 (Mo.App.1937). We must determine, therefore, whether HLF has met its burden to overcome the presumption that the June 23, 2009 Order was a valid judgment.

■■■ "Missouri courts have consistently held that no judgment can be granted against someone who is not a party to the case." *Doss v. Howell–Oregon Elec. Coop., Inc.*, 158 S.W.3d 778, 783 (Mo.App. S.D.2005) (citing *State ex rel. Am. Family Mut. Ins. Co. v. Scott*, 988 S.W.2d 45, 47 (Mo.App. S.D.1998)). "The determination of whether someone is or becomes a party to the action takes into account whether the person or entity was designated as a

---

**6.** The latter described category of jurisdiction, the jurisdiction to render a particular judgment in a particular case, (often referred to as "jurisdictional competence") is no longer a recognized category of "jurisdiction" in light of our Supreme Court's decision in *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009), and is now referred to as a court's "authority" to render a particular judgment in a particular case. Our Supreme Court has yet to decide whether a trial court's lack of "authority" to render a particular judgment in a particular case continues to subject the judgment to collateral attack. It is not our task in this case to determine whether the effect of *Webb* is to eliminate a court's lack of "authority" to render a particular judgment as a route for collaterally attacking a judgment, as HLF challenges the trial court's personal jurisdiction over HLF, not its "authority" to render this particular judgment.

party in the petition and whether the person or entity intervened." *Id.* Clearly, HLF was neither designated as a party in the caption of the Marshall Case, nor joined as a party by intervention. HLF thus relies on *Doss* and *Scott* to contend that it was not a party to the Marshall Case, and that the Settlement Court did not have personal jurisdiction over it to permit entry of a judgment affecting HLF's interests.[7] Indeed the *general* rule is that "[i]f [a] person or entity was not a party to the action at the time of the judgment, a trial court acts in excess of its jurisdiction by entering a judgment against that person or entity." *Id.*

HLF misapprehends the scope of the general principle articulated in *Doss* and *Scott.* Though one is a party if designated in a case caption or joined by formal intervention, these are not the exclusive means by which a court can secure personal jurisdiction over someone. That is no more evident than in the case of attorney's liens, where, as we hereinafter discuss, attorneys are free to affirmatively submit themselves to the personal jurisdiction of a court in an original proceeding for the purpose of having an attorney's lien determined by mere motion or other affirmative filing with the court, though the motion or affirmative filing does not render the attorney a "party" in the manner anticipated by *Doss.*

### The Creation and Enforcement of Attorney's Liens

HLF relies on section 484.130 as the statutory authority for its attorney's lien. Section 484.130 provides:

> The compensation of an attorney or counselor for his services is governed by

agreement, express or implied, which is not restrained by law. *From the commencement of an action* or the service of an answer containing a counterclaim, *the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor,* and the proceeds thereof in whosesoever hands they may come; *and cannot be affected by any settlement between the parties before or after judgment.*

(Emphasis added.) Section 484.130 essentially establishes a charging lien, "an equitable right to have costs advanced and attorney's fees secured by the judgment entered in the suit wherein the costs were advanced and the fee earned." 7A C.J.S. *Attorney and Client* section 446 (2004). "An attorney's right to compensation remains based on contract, and attorneys liens [merely] provide security for these contractual rights." 7A C.J.S. *Attorney and Client* section 443 (2004). Thus, a charging lien is an assertion of a claim against a particular res—"a verdict, report, decision or judgment" in a client's favor. Section 484.130. Because settlement cannot interfere with a charging lien, the res to which an attorney's lien attaches also includes the proceeds of settlement.

Under section 484.130, an attorney's lien automatically attaches "from the commencement of an action or the service of an answer containing a counterclaim." *Downs v. Hodge,* 413 S.W.2d 519, 523 (Mo.App.1967). "No notice of . . . [a section 484.130] lien [is] necessary after suit [is] filed, and summons served" if the attorney claiming the lien brought the suit and appeared in the case.[8] *Id.* at 524.

---

7. "An attorney's lien upon a cause of action is a property right in the attorney." *Reed v. Garner Industries, Inc.,* 832 S.W.2d 945, 948 (Mo.App. E.D.1992) (citing *Argeropoulos v.*

*Kansas City Rys.,* 201 Mo.App. 287, 212 S.W. 369, 373 (1919)).

8. In contrast, section 484.140 provides an additional means of asserting an attorney's lien

The filing of the suit is all the notice required. *Id.* Once a section 484.130 lien attaches, a defendant who thereafter settles with a plaintiff without addressing the lien or otherwise securing its release does so at his peril. 7A C.J.S. *Attorney and Client* section 475 (2004). Consistent with this principle, section 484.130 expressly provides that an attorney's lien cannot be affected by a settlement reached before or after judgment.

Here, HLF appeared of record in the Marshall Case during at least a part of the time the case was on file in Jasper County, and thus purports to have had an attorney's lien under section 484.130 which attached upon the filing of the petition in the Marshall Case. The settlement reached in the Marshall Case did not interfere with HLF's lien, as the lien attached to the res of the proceeds of settlement. The attachment of HLF's lien to the settlement proceeds in the Marshall Case was not affected by the dismissal and re-filing of the Marshall Case in Jackson County.[9] 7A C.J.S. *Attorney and Client* section 451 (2004) (though dismissal of client's cause of action generally causes an attorney's lien to fall, the lien is automatically restored if the client's action is refiled). Thus, absent resolution of the HLF lien at the time the settlement of the Marshall Case was consummated, BFRG, Wright, Amber Marshall and the defendants (and potentially their counsel) could have remained exposed to HLF for the unsatisfied lien. *Satterfield v. Southern Railway Co.*, 287 S.W.2d 395, 398 (Mo.App.1956); 7A C.J.S. *Attorney and Client*, section 476 (2004) ("[A]n attorney, in case of a settlement by the client, may pursue a remedy against the adverse party for the payment of the fees or against the client, or against both, on the attorney's one cause of action."). As a result, the means by which an attorney's lien can be either enforced by the attorney, or determined by one responsible for payment of the lien, is of utmost importance.

▮▮▮▮ "While Missouri's version of the attorney lien statute [section 484.130] does not provide a remedy to enforce the lien, 'the courts will not suffer it to perish from such failure.'" *Plaza Shoe Store, Inc. v. Hermel, Inc.*, 636 S.W.2d 53, 56 (Mo. banc 1982) (citations omitted). Missouri courts have recognized that "'an attorney is not restricted to any particular remedy for the foreclosing of his lien. He may proceed by an independent suit against the party who was the defendant in the original case.... Or he may proceed against the same party *by motion in the original case.*'" *Id.* (emphasis added) (quoting *Satterfield*, 287 S.W.2d at 397.) Indeed, "when the client's action is still pending and open, the rule in Missouri is

in contingency fee matters, and describes specific requirements for notifying a defendant of the lien as to permit the lien to attach from the time notice of the lien is provided.

9. HLF's pleadings before the trial court, and its brief filed with this court strongly suggest that HLF would not have contested determination of its lien by the Jasper County Court because HLF was still showing up as an attorney of record on the pleadings while the Marshall Case was on file in Jasper County. Once the case was dismissed and re-filed in Jackson County, HLF was no longer shown as counsel of record on the pleadings. HLF misunderstands the significance of HLF's identification as counsel of record on the pleadings. HLF's initial identification as counsel on the pleadings served merely to insure that its attorney's lien automatically attached under section 484.130. Once the lien attached, its status could not be affected or interfered with by the parties' subsequent re-filing of the Marshall Case in Jackson County. We have not addressed, and need not determine, whether the mere presence of an attorney's name on pleadings is sufficient, standing alone, to confer personal jurisdiction over the attorney to determine a lien.

quite clear that an attorney *may* proceed by motion for his fee in the client's case." *Kansas City Area Transp. Auth. v. 4550 Main Associates,* 893 S.W.2d 861, 867 (Mo. App. W.D.1995) (emphasis added).

Thus, if an attorney asserting a lien elects to enforce the lien by filing a motion in the original case, the attorney has voluntarily subjected himself to the court's personal jurisdiction for that purpose, and is treated as a "party," with standing to assert an interest in any verdict, report, decision, judgment, or settlement, *even though the attorney is not named in the case caption and has not formally intervened.* Had HLF (instead of BFRG) filed the motion to have its lien determined in the Marshall Case, we would have no difficulty concluding that HLF had voluntarily submitted to the personal jurisdiction of the Settlement Court and that the June 23, 2009 Order was final and conclusive, rendering collateral attack of the Order improper.[10]

Here, of course, the motion to have HLF's attorney's lien determined in the Marshall Case was *not* filed by HLF, but was instead filed by BFRG. In addition, it is uncontested that HLF has not filed an independent action to enforce its attorney's lien. HLF has not, therefore, under-

taken to enforce its lien by either of the means recognized in *Plaza Shoe.*

HLF did remind defense counsel of its lien after learning of the settlement in the Marshall Case and demanded in writing to be notified of the hearing to approve the minor settlement so that its attorney's lien could be determined. The trial court in the Declaratory Judgment Action concluded that HLF's affirmative conduct in this regard "placed its attorney's lien before [the Settlement Court] when it asserted the attorney's lien in connection with" the Marshall Case, and that the Settlement Court thus had personal jurisdiction over HLF.

No Missouri case has explored whether an attorney's *unfiled* written demand on a party or its counsel to have an attorney's lien determined by the court in the original proceeding is the functional equivalent of the attorney filing a motion to have his lien determined. Thus, no Missouri court has explored whether an unfiled written demand to have an attorney's lien determined by the court in the original proceeding is sufficient to constitute the attorney's voluntary submission to the personal jurisdiction of the court for that purpose. Though no Missouri case has squarely addressed this issue of first impression, we are guided to a resolution

---

10. HLF complains that even if it was subject to the Settlement Court's personal jurisdiction, because it was not a named party in the case caption for the Marshall Case, it would not have been able to appeal the June 23, 2009 Order. We disagree. "The general rule is that a party is aggrieved when the judgment operates prejudicially and directly upon his personal or property rights or interests and that such must be immediate and not merely a possible remote consequence." *Hertz Corp. v. State Tax Comm'n,* 528 S.W.2d 952, 954 (Mo. banc 1975). Thus, if the Settlement Court had personal jurisdiction over HLF to determine its lien, HLF would have been aggrieved by, and could have appealed, the June 23, 2009 Order, as the Order clearly operated

"prejudicially and directly" upon HLF's property right to assert an attorney's lien against the proceeds of the Marshall Case. *See, e.g., Reed,* 832 S.W.2d at 946 (attorney not identified as "party" in case caption appealed court's unfavorable disposition of client's motion to determine the validity of the attorney's lien, which motion was filed by the client in connection with settlement of client's worker's compensation action); *Borgmeier v. Stone,* 233 F.2d 818, 820 (7th Cir.1956) ("It is self-evident that when a fund upon which an attorney claims a statutory lien is being released from that lien, the attorney [though not a named party in the case caption] is a party to that proceeding and is entitled to appeal from an adverse order.").

by the disposition of attorney's lien claims in similar cases.

In *Satterfield*, an attorney was not required to determine his attorney's lien in a proceeding filed by his client in Tennessee with the assistance of a different attorney, even though following settlement, the client, *though not required by law to do so,* elected to have the Tennessee court formally approve the settlement and enter a judgment. 287 S.W.2d at 398. Instead, the attorney was entitled to file a motion to determine his lien in a nearly identical suit pending in Missouri. *Id. Satterfield* thus instructs that the voluntary submission of a settlement to a court for approval (*when not required by statute* ) is insufficient, standing alone, to require an attorney asserting a lien to submit to the settlement court's jurisdiction for determination of the lien.

In *Floyd v. Shaw*, 830 S.W.2d 564 (Mo. App. E.D.1992), the Eastern District held that a suit involving a fee splitting dispute between two attorneys following settlement of a wrongful death action was not barred by res judicata. *Id.* at 565–66. The wrongful death settlement had been submitted to the court for approval as required by statute. *Id.* at 565. The court approving the settlement allocated a fee to one of the client's attorneys pursuant to section 537.095(4) which allows a court "[t]o deduct and pay the expenses of recovery and collection of the judgment and the attorneys' fees as contracted." *Id.* The other attorney who claimed an entitlement to some of the awarded attorney's fees was not joined as a party to the original proceeding for purposes of determining his fee, and had not filed a motion to determine his fee in the original proceeding. *Id.* Nor was a motion to determine the other attorney's fees filed by the attorney remaining in the case. Concluding that "there is no explicit authority in

[section 537.095(4) ] for the adjudication of disputes among … attorneys," the court held it was improper for the trial court to dismiss the later suit filed to enforce a fee-splitting agreement based on the doctrine of res judicata. *Id.* at 565–66. As a corollary to *Satterfield, Floyd* thus instructs that the submission of a settlement to a court for approval (***even when required by statute*** ) is insufficient, standing alone, to require an attorney asserting a lien to submit to the settlement court's jurisdiction for determination of the lien. *Id.* at 565–66.

In *Reed v. Garner Industries, Inc.*, an attorney affirmatively filed notice of an attorney's lien *in the suit where the lien originated.* 832 S.W.2d 945, 947 (Mo.App. E.D.1992). "With the exception of the lien notice, [attorney's] name [did] not appear in any pleading, correspondence or other document in the court file." *Id.* When the suit was settled, *the plaintiff* filed a motion to have the attorney's lien determined, and afforded the attorney notice of the hearing. *Id.* The attorney hired counsel who entered his appearance in the case. *Id.* That attorney sought a continuance which was denied. *Id.* The noticed hearing proceeded, with counsel for the attorney in attendance. *Id.* at 947–48. The trial court entered a judgment determining that the attorney did not have a valid attorney's lien. *Id.* at 948. The attorney appealed. On appeal, the attorney claimed his due process rights had been violated. *Id.* The Eastern District disagreed, noting that the attorney:

> [R]eceived fourteen days' notice of a hearing ***to determine the validity of the lien notice he himself had filed*** …. The notice complied with the time requirements of Rule 44.01 for service of a written motion. Appellant retained Missouri counsel who appeared at and fully participated in the hearing.

*Id.* (emphasis added). The court concluded that "[u]nder these circumstances, the notice and hearing afforded [attorney] was appropriate to the nature of the case." *Id.* It was significant to the court that:

> [Attorney] himself *chose to file the lien in the original case rather than proceed by independent suit.* Nothing indicates he was deprived of an essential right by the trial court's exercise of authority by summary procedure; [attorney] received due notice, was fully advised of the nature of his own claim, and was fully accorded the right to present evidence in support thereof. [Attorney] himself *placed the matter before the court,* and the court did not abuse its discretion by adjudicating the dispute by way of [plaintiff's] motion.

*Id.* at 949 (emphasis added) (internal citation omitted). The Eastern District thus recognized that "[t]he remedy for enforcing the lien is left to the trial court, which has wide latitude to determine the propriety of the method of enforcement selected." *Id.* " '[I]n the final analysis it is up to the court to determine whether the method selected by the attorney is appropriate under all the facts and circumstances.' " *Plaza Shoe Store, Inc.,* 636 S.W.2d at 56 (quoting *Satterfield,* 287 S.W.2d at 397).[11] *Reed* thus instructs that an attorney's affirmative act of filing notice of an attorney's lien in an original proceeding is the functional equivalent of the attorney filing a motion to have his lien determined in the original proceeding, and thus constitutes the attorney's voluntary submission to the personal jurisdiction of the court in the original proceeding.

Though the circumstances before us are not squarely in line with *Satterfield, Floyd,* or *Reed,* these cases provide important guidance. *Satterfield* and *Floyd* combine to instruct that HLF was not required to determine his attorney's lien in connection with the settlement approval hearing in the Marshall Case, even though section 507.184.3 mandated the hearing and authorized the court to determine attorney's fees payable from the settlement res.[12] *Reed* instructs, however, that *if* HLF's unfiled written demand on the defendants to notify HLF of the settlement approval hearing so its lien could be determined to have constituted an affirmative step to bring the lien before the court in the Marshall Case for determination, that affirmative step was sufficient to bestow personal jurisdiction over HLF and to require HLF to determine its lien in the original proceeding, subject to procedural due process requirements necessitating reasonable notice of any hearing and an opportunity to

---

**11.** BFRG claims this language in *Reed* affords a trial court the power to direct how an attorney enforces his lien, even over the attorney's objection. We disagree. *Reed* merely recognizes that a trial court retains the power to determine whether a means of enforcement of an attorney's lien *selected by the attorney* is appropriate under all of the facts and circumstances.

**12.** Section 507.184.3 provides:

> The court shall have the power and authority to hear evidence on and either approve or disapprove a proposed contract to settle an action or claim of a minor, to authorize and order the next friend, guardian ad litem or guardian or conservator to execute and sign a release or satisfaction and discharge of judgment, and *shall also have the power and authority to approve a fee contract between the next friend, guardian ad litem or guardian or conservator and an attorney and to order him to pay an attorney fee and to pay the expenses which had been reasonably incurred in connection with the preparation and prosecution of the action or claim* and including the cost of any bonds required herein. (Emphasis added.)

be heard.[13]

■ "Parties may ... consent to jurisdiction of the person by appropriate entry of appearance or by undertaking to litigate in a court." *Thompson v. Thompson*, 645 S.W.2d 79, 82 (Mo.App. W.D.1982). We have located no authority which suggests that an attorney's *unfiled* assertion of a right (or even a demand) to be made a part of a settlement approval process is sufficient, standing alone, to constitute the attorney's entry of appearance in a case or a binding undertaking to litigate in court. In *Reed*, the Eastern District placed great emphasis on the fact that the attorney *chose to file a notice of lien in the original case rather than to proceed by independent suit* to enforce his lien, and concluded that as a result *the attorney placed the matter of his lien before the court for disposition.* We conclude that although HLF's unfiled written demand for notice of the settlement hearing was demonstrative of HLF's then desire to have its lien determined in the original proceeding, the unfiled written demand was not an *affirmative filing* by HLF in the original proceeding sufficient to submit HLF to the personal jurisdiction of the court, or to bind HLF to an election to have its lien determined in the Marshall Case.[14]

BFRG claims that personal jurisdiction was conferred over HLF by the operation of section 507.184.3 because the statute authorized the Settlement Court to approve any attorney's fees to be paid from the settlement res. The Settlement Court also read section 507.184.3 in this manner, notwithstanding HLF's objection to the Settlement Court's exercise of jurisdiction over it, as the Settlement Court concluded in the June 23, 2009 Order that it had the authority to determine the validity of the HLF attorney's lien *as an issue ancillary to approval of the settlement of the Marshall Case.* We disagree. In *Floyd* the Eastern District held that a statute compelling court approval of a settlement does not require an attorney to resolve a dispute over how much he is to be paid as a part of the settlement approval process, even though the statute in that case, section 537.095(4), directed the court to approve the payment of attorney's fees from the settlement res. 830 S.W.2d at 565–66. We similarly conclude that although section 507.184.3 empowered the Settlement Court to determine attorney's fees payable from the settlement res in the Marshall Case, the statute did not bestow personal jurisdiction over HLF. A court's statutory authority to determine attorney's fees payable from a settlement res remains subject to the independent requirement that personal jurisdiction be secured over any attorney whose fees will be determined, whether by the attorney's consent, by the attorney's other voluntary action evidenc-

13. There is no issue in this case that HLF received more than fourteen days notice of the hearing scheduled on BFRG's motion to determine HLF's attorney's lien (an amount of time deemed sufficient in *Reed* to comport with procedural due process requirements), and that HLF had an opportunity to appear and to be heard at the scheduled hearing on the motion, though it elected not to do so.

14. BFRG has not claimed that HLF's unfiled written demand to have its lien determined as a part of the settlement approval hearing constituted an enforceable contract. Parties to a contract are free to consent to a particular court's exercise of personal jurisdiction over them for purposes described in the contract. Thus, we do not foreclose by this Opinion the possibility that an attorney's fee contract could include an enforceable provision binding the attorney to an election to have any attorney's lien claim determined in the original proceeding where the lien arose, along with an enforceable provision reflecting the attorney's voluntary submission to the personal jurisdiction of the court in the original proceeding for that purpose.

ing a binding election to have his lien determined in the original proceeding, or by a use of available processes to bring the attorney before the court as a party for purposes of determining the attorney's lien.[15]

BFRG also argues that it had the right to "bring" HLF into the Marshall case by the filing of its motion to determine the HLF lien, because *Reed* holds that a motion to determine an attorney's lien filed by or on behalf of a client confers personal jurisdiction over the attorney asserting the lien. We disagree. *Reed* does not hold that a client's motion to determine an attorney's lien in the original proceeding where the lien arose is sufficient to confer personal jurisdiction over the attorney asserting the lien. Though the client in *Reed* did file the motion to determine the attorney's lien, the Eastern District's holding that the court in the original proceeding had personal jurisdiction over the attorney asserting a lien turned exclusively on the affirmative act taken by the attorney to bring his lien before the court for determination—the filing of the notice of attorney's lien. 832 S.W.2d at 949. *Reed* does not assist BFRG.

Thus, in the rare case like this one where the cooperation of past and present counsel for the benefit of a client is unfortunately not forthcoming, we necessarily conclude that a court will not be able to enter a final, conclusive judgment determining an attorney's lien based *solely* on a motion filed by the client or some other party exposed to pay the lien *unless* the attorney asserting the lien voluntarily (and generally) appears in response to the motion,[16] or unless the attorney has affirmatively filed a motion or document with the court sufficient to constitute the attorney's election to have the court determine his lien.

We recognize the practical dilemma this presents for parties desiring to resolve attorney's liens in connection with settlements, particularly settlements requiring court approval. Parties faced with this dilemma are not without recourse, however. Although an attorney has the right to choose the means by which he elects to *enforce* his attorney's lien (i.e. either by motion in the original proceeding or by an independent action), that right does not foreclose the right of one obligated to pay the lien to *seek determination* of the lien (and thus of the person's exposure on the lien) through a proceeding which brings the attorney before the court in a manner sufficient to establish personal jurisdiction. Thus, in a scenario like the one before us, BFRG could have sought leave to join HLF as a party to the Marshall Case during the settlement approval process for the purpose of having HLF's attorney's lien determined and, upon securing such leave, could thereafter have served process on HLF. Or the parties in the Marshall Case could have agreed to permit the defendants to interplead funds from the settlement res believed sufficient to cover all attorney's fees (including HLF's lien), and

---

**15.** This latter option assumes an attorney is otherwise subject to the court's jurisdiction because the attorney can be found in Missouri, or is otherwise subject to the operation of Missouri's long arm jurisdiction statute, section 506.500.

**16.** By so appearing, the attorney would be deemed to have entered a general appearance and would be bound by the result. *See, e.g., Bland v. IMCO Recycling, Inc.,* 67 S.W.3d 673, 679 (Mo.App. S.D.2002). In contrast, if an attorney asserting a lien responds to a motion filed to determine the lien with a limited, or special, appearance to challenge the trial court's jurisdiction, the attorney could thereafter contest the motion without waiving the personal jurisdiction claim. *Walker v. Gruner,* 875 S.W.2d 587, 589 (Mo. App. E.D.1994).

could thereafter have pursued an interpleader action. Or any of the parties exposed for payment of HLF's attorney's lien could have filed an independent action seeking to have the validity and amount of HLF's lien declared.[17] Or, in lieu of instituting formal proceedings to determine HLF's lien, the parties could have been content to address responsibility for the lien amongst themselves by way of an indemnification agreement, leaving HLF to determine when or if it would ever take action to enforce its lien.

This list of options is not exhaustive. However, whatever recourse was available to BFRG and the parties in the Marshall Case, that recourse did not include the right to summarily file and notice up a motion to determine HLF's attorney's lien over HLF's objection, notwithstanding HLF's *unfiled* written demand to have its lien determined in the settlement approval hearing.[18] The requirement that a court secure personal jurisdiction over a person as a condition of entering a judgment conclusively affecting that person's rights is not dispensed with merely because the right at issue is an unresolved attorney's lien.

We conclude, therefore, that under the facts and circumstances of this case, the Settlement Court did not have personal jurisdiction over HLF to determine HLF's

section 484.130 attorney's lien. The June 23, 2009 Order was void as to HLF and was thus permissibly subject to collateral attack in the Declaratory Judgment Action. The trial court erred as a matter of law in entering summary judgment declaring the Declaratory Judgment Action barred by the doctrine of res judicata.

Though we are required to reverse the trial court's judgment, we cannot remand this matter for further proceedings. The only request for affirmative relief framed by the pleadings at the time the trial court entered its judgment was the request to declare the Declaratory Judgment Action barred by the doctrine of res judicata due to the conclusive effect of the Settlement Court's June 23, 2009 Order. We have determined this relief to be improper as a matter of law. Neither Wright, BFRG, nor HLF asserted an alternative request that the trial court declare the validity and amount of HLF's lien in the Declaratory Judgment Action.[19] As a result, there remains no undetermined affirmative request for relief in the Declaratory Judgment Action requiring remand. Our reversal of the trial court's judgment thus concludes the Declaratory Judgment Action. The practical effect is that both the validity of HLF's claimed attorney's lien,[20] and the amount of the

17. Wright's Declaratory Judgment Action as initially filed did just that—it sought to determine the validity and amount of HLF's lien. However, once the Settlement Court entered the June 23, 2009 Order, Wright abandoned this requested relief, and in its stead requested a declaration that the Settlement Court's June 23, 2009 Order finally and conclusively determined HLF's lien.

18. Even though BFRG's motion to determine HLF's lien in this case did not create personal jurisdiction over HLF, nothing prevented HLF from cooperating to have its lien so determined, particularly in light of its previous demand to be notified of the settlement

approval hearing. BFRG's and HLF's inability to cooperate to resolve HLF's lien claim with as little angst and procedure as possible, for the benefit of their mutual client, is unfortunate.

19. Though Wright made this request in his original petition, the request was abandoned in the second amended petition.

20. BFRG has consistently challenged the validity of HLF's lien on several grounds, including, without limitation, that HLF had no contract with Amber Marshall to perform legal services, and that HLF waived any right to

lien (if valid), remain undetermined.[21] We express chagrin that a matter of this nature, which could and should have been resolved through cooperative efforts motivated by the best interests of the client, remains unresolved notwithstanding the investment of significant judicial resources.

### Conclusion

We reverse the trial court's judgment and dismiss this matter without prejudice.

All concur.

recover fees from Amber Marshall when it voluntarily withdrew from her representation.

21. We are cognizant that HLF has already been paid the out of pocket expenses it claimed it was owed as a part of its attorney's lien, leaving only attorney's fees, if any, undetermined. Though BFRG contends this evidenced HLF's "submission" to the June 23, 2009 Order, we disagree. BFRG had agreed all along to pay HLF's out of pocket expenses—and made the commitment to do so in its December 18, 2007 letter to HLF which followed HLF's voluntary withdrawal from Amber Marshall's representation.