**Jewel L. REID, et al., Plaintiffs,**

**v.**

**Vernon S. REID, Jr., Defendant–Appellant,**

**and**

**Dubail Judge, P.C., Intervenor–Respondent.**

**No. 70949.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 12, 1997.

Alif A. Williams, St. Louis, for defendant–appellant.

Nancy E. Emmel, Dubail Judge. P.C., St. Louis, for intervenor–respondent.

## OPINION

HOFF, Judge.

Vernon S. Reid, Jr. (Reid) appeals from an amended judgment awarding $65,000 in attorneys' fees to Dubail Judge, P.C. (Dubail Judge). In the trial court proceeding several other individuals were named as defendants. None of the plaintiffs and no defendants other than Vernon S. Reid, Jr. are parties to this appeal. This action has twice before been the subject of appeal. *Reid v. Reid,* 879 S.W.2d 796 (Mo.App. E.D.1994); *Reid v. Reid,* 906 S.W.2d 740 (Mo.App. E.D.1995). We reverse and remand to the trial court to enter judgment in favor of Reid on Dubail Judge's request for attorneys' fees.

In August 1990, at Reid's request, an attorney with Dubail Judge, Robert Kilker, drafted a will for Reid's terminally ill aunt, Churchill R. Carter. *Reid,* 906 S.W.2d at 741. Carter, who had raised Reid from the age of 2 years old to 21 years old, expressed her desire to leave her entire estate to Reid. *Id.* Carter died on August 12, 1990, eight days after Kilker first visited her and six days after the execution of the will in Kilker's presence. *Id.*

Reid retained Dubail Judge's services to represent him in his capacity as personal representative of Carter's estate. *Id.* "From August to October 1990, Dubail Judge performed legal services for Carter's estate." *Id.* Those services are not the subject of this appeal.

On November 12, 1990, Michael Gunn, an attorney who represented some of Carter's siblings, telephoned Kilker to advise him that a will contest would be filed on the siblings' behalf. *Id.* The next day Reid, Kilker, and William Sitzer, another attorney at Dubail Judge, met to discuss the potential will contest. *Id.* The following day, Carter's will was admitted to probate. *Id.* On November 16, 1990, a petition contesting the will was filed by six individuals (will contestants) against Reid and others. *Id.* at 741–42.

On November 29, 1990, Reid and Sitzer discussed a fee for Dubail Judge's defense of the will on Reid's behalf. *Id.* at 742. Although Reid agreed to a contingency fee arrangement, he did not sign an agreement at that time. *Id.* Reid did not authorize any settlement negotiations and opposed any settlement or compromise of his inheritance. *Id.*

"On December 11, 1990, Kilker and Sitzer met with Gunn. The trial court found Gunn proposed a 50–50 settlement between Reid ... and the will contestants. The next day Gunn returned to Dubail Judge with a written settlement proposal." *Id.* That proposal did not account for non-settling heirs. *Id.* Kilker spent six hours reworking the numbers on December 12, 1990. *Id.* Pursuant to those calculations, Reid would receive by settlement "43.42% of Carter's net estate, one-half of the estate less an attorneys' fee." *Id.* "On December 14, 1990, Reid ... and Dubail Judge entered into a 33 1/3 contingency fee agreement for defending the will." *Id.*

On December 20, 1990, Kilker told Reid he could not support the will because, he said, "as a witness to the will contest facts, ... he would not be a good witness to support validity. Sitzer recommended settlement." *Id.*

Ten days later, Reid discharged Dubail Judge and retained the services of another law firm. *Id.* "On January 31, 1991, [Reid] signed a settlement agreement under which he will receive 45.59% of Carter's estate." *Id.*

In August 1991, Dubail Judge successfully moved to intervene in the will contest to preserve its statutory attorneys' lien. *Id.* In November 1991, Dubail Judge filed an "amended motion for judgment for attorneys' fees and advancements and for attorneys' lien" on Reid's share of Carter's estate. *Id.* In May 1993, the trial court entered a judgment in favor of Dubail Judge and placed a lien of 33 and 1/3 "on any amounts subsequently determined as due Reid ... under the settlement agreement." *Id.* In November 1994, the trial court entered a judgment approving the will contest settlement. *Id.*

This court dismissed the first appeal in this case for lack of subject matter jurisdiction. *Reid v. Reid,* 879 S.W.2d 796 (Mo.App. E.D.1994). In resolving Reid's second ap-

peal, we held that the attorneys' lien available under section 484.130 RSMo 1986 "does not apply to legal services rendered solely to defend a will." *Reid*, 906 S.W.2d at 742. We remanded the matter "to the trial court to determine the reasonable value in quantum meruit of Dubail Judge's legal services, *if any*" *Id.* at 743 (emphasis added).

With respect to Dubail Judge's claim for attorneys' fees based upon quantum meruit, this Court specifically found that Dubail Judge "has the burden of proving the reasonable value of services performed." *Id.* Moreover, we pointed out, "[f]ailure to prove reasonable value is fatal to a quantum meruit claim." *Id.* To determine the reasonable value in Missouri, we noted, the court must consider the "time, nature, character and amount of services rendered, nature and importance of the litigation, degree of responsibility imposed on or incurred by the attorney, the amount of money or property involved, the degree of professional ability, skill and experience called for and used, and the result achieved." *Id.*, citing *Cervantes v. Ryan*, 799 S.W.2d 111, 115 (Mo.App. E.D. 1990).

We found the record insufficient to support a quantum meruit fee award constituting 33 and 1/3 of Reid's share of the estate.[1] *Reid*, 906 S.W.2d at 743. We expressly noted the trial court "did not find [Dubail Judge's] services were valuable." *Id.* This Court then concluded

> a high degree of professional ability, skill and experience was not required or used in this case. The services were of no extraordinary benefit to Reid ... and his new attorneys [because Gunn] proposed the 50–50 settlement [and] Reid['s] new attorneys merely adjusted the proposal for attorneys' fees of all the parties. The mathematical calculation was simple and required no unusual legal skills[ and t]he settlement Reid ... accepted after obtain-

ing new counsel did not require him or them to use the ... calculations

performed by Dubail Judge. *Id.*

On remand, Dubail Judge sought an award of $75,000 in attorneys' fees. In awarding Dubail Judge $65,000 in attorneys' fees, the trial court specifically found "the amount of the gross estate of Churchill Carter, deceased, was the sum of approximately $2,500,000.00[;] the gross amount paid to ... Reid was 50% or $635,479.80; [and] the efforts of Dubail Judge were of benefit to [Reid]." This appeal followed.

■■ The setting of attorneys' fees is within the sound discretion of the trial court. *Roberts v. McNary*, 636 S.W.2d 332, 338 (Mo. banc 1982), *overruled in part on other grounds, Keller v. Marion County Ambulance Dist.*, 820 S.W.2d 301, 304–05 (Mo. banc 1991). The fee award will not be reversed "unless the award is arbitrarily arrived at or is so unreasonable as to indicate indifference and lack of proper judicial consideration." *Roberts*, 636 S.W.2d at 338. Importantly, if this Court finds a fee excessive, we are authorized to fix a fee. *Sidney Smith, Inc. v. Steinberg*, 316 S.W.2d 243, 257 (Mo.App. S.D.1958); Rule 84.14.

■■ Here the record supports a determination that the $65,000 fee award to Dubail Judge is excessive. The trial court's award signifies a rate of more than $1,000 per hour for the 52.50 hours itemized by Dubail Judge. In remanding this matter for the trial court "to determine the reasonable value in quantum meruit of Dubail Judge's legal services, *if any*,"[2] this Court intimated there was a possibility that the services rendered by Dubail Judge may have no value for purposes of a quantum meruit fee award. The available record, including the transcript of the hearing on remand, does not clearly show to what extent the trial court considered the findings this Court made in the second appeal. In

---

**1.** Of the total 59.30 hours itemized by Dubail Judge's attorneys for services rendered in the will contest, this Court expressly found the 6.8 hours itemized by Dubail Judge for services rendered after December 31, 1990, could not be compensated in quantum meruit because those services were rendered after Reid had discharged the law firm. *Reid*, 906 S.W.2d at 743. There-

fore, only the 52.50 hours itemized by Dubail Judge for services rendered between November 12, 1990, and December 30, 1990, are under consideration for a fee award based upon quantum meruit.

**2.** *Reid*, 906 S.W.2d at 743 (emphasis added).

relevant part, this Court had found Dubail Judge did not use a high degree of professional ability and skill in providing services to Reid; the services rendered by Dubail Judge were not of "extraordinary benefit to Reid" or his new attorneys; and Dubail Judge's services were in large part relatively simple mathematical calculations that were not necessarily used by Reid's new counsel. Without expressly addressing the impact of these factors on the determination of the value of Dubail Judge's services, the trial court awarded close to the total amount requested by Dubail Judge based upon the $2.5 million amount of decedent's estate; the approximately $600,000 gross amount paid to Reid; and a finding that Dubail Judge's efforts benefited Reid. Without more, this Court is unable to conclude the trial court's award of $65,000 is reasonable and not arbitrary.

Moreover, we find Dubail Judge is not entitled to any compensation for its representation of Reid in defense of the will contest due to a conflict of interest. According to Kilker's testimony at the 1993 hearing, Kilker first met Carter on Saturday, August 4, 1990. Carter was terminally ill and not very responsive during their conversation. Kilker returned Monday, August 6, 1990, with three employees of Dubail Judge for execution of the will he had drafted. While at her bedside Kilker orally reviewed the contents of the will with Carter and then signed the will on her behalf. The witnesses remained at the threshold of the room, and Reid was behind the witnesses, while Kilker reviewed the will.

Kilker thought Carter's condition had gravely worsened since the Saturday visit. Carter did not speak or make any sounds during the Monday visit and nodded only once in response to Kilker's inquiries.

In the second *Reid* appeal, this Court found

> [o]n December 20, 1990, Kilker told Reid ... he could not support the will. Kilker, for the firm, rendered the professional services to prepare the will and attend to its execution. However, as a witness to the will contest facts, he informed Reid ... he

would not be a good witness to support validity. Sitzer recommended settlement. *Reid,* 906 S.W.2d at 742. Kilker did not advise Reid of his concerns regarding testifying in support of the validity of the will until December 20, 1990. That was approximately one week after Dubail Judge and Reid had signed a written contingency fee agreement and over one month after the will contest was filed and Dubail Judge's services regarding defense of the will contest began. Nothing of record indicates that some event beyond the attorneys' control occurred on or within a short time before December 20th to raise concerns about Kilker's testimony. *See International Materials Corp. v. Sun Corp.,* 824 S.W.2d 890, 895 (Mo. banc 1992). Rather, the record reveals that any concerns about Kilker's ability to testify in support of the validity of the will were available as of the time the will was drafted and executed in August 1990 and before the representation regarding defense of the will contest began. Because it appears that any testimony of counsel would conflict with any testimony of Reid regarding execution of the will, the testator's capacity, or any alleged undue influence on the testator, a conflict of interest existed which precludes an award of compensation to Dubail Judge for its services on behalf of Reid in the will contest. *See* Missouri Rules of Professional Conduct 3.7(b), 1.7(b) and 1.10 (as set forth in Missouri Supreme Court Rule 4); *Laughlin v. Boatmen's Nat'l Bank,* 163 S.W.2d 761, 766 (Mo.1942).

We find Dubail Judge did not render valuable services to Reid regarding the will contest. The trial court's award of attorneys' fees was unreasonable. We reverse and remand to the trial court to enter judgment in favor of Reid on Dubail Judge's request for attorneys' fees.

CRAHAN, C.J., concurs in separate opinion.

GRIMM, J., concurs.

CRAHAN, Chief Judge, concurring.

I concur in Judge Hoff's opinion. I write separately to make note of an additional basis for reversing the fee award.

As noted in Judge Hoff's opinion, the only witnesses to the execution of the will were employees of Dubail Judge. Even if attorney Kilker had been fully prepared to support the validity of the will, Dubail Judge would not be entitled to a fee in quantum meruit because, by entering into a contingent fee with Reid, the firm effectively poisoned Reid's case. Although under certain circumstances the rules of professional conduct permit a firm to represent a client even though a member of the firm will be a witness (See Rule 3.7), the fee arrangement here had the effect of tainting all of the potential Dubail Judge witnesses. Every witness who could conceivably support the validity of the will could be forced on cross-examination to admit that their employer had a direct financial stake in the outcome. Under such circumstances, Dubail Judge should not be permitted to recover any fee, regardless of whether attorney Kilker had reservations about the will.